**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>KENYATTA DRAINE, a/k/a "KD,"<br><br>　　　　　Defendant. | No. CR 06-4097-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT DRAINE'S MOTION IN LIMINE** |

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
　　*A. The Prior Marijuana Conviction* . . . . . . . . . . . . . . . . . . . . . . . 3
　　　　*1.　Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . 3
　　　　*2.　Rule 404(b)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
　　　　*3.　Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
　　*B. The Recordings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
　　　　*1.　Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . 6
　　　　*2.　Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
　　　　　　*a.　Quality* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
　　　　　　　　*i.　Recording N-207* . . . . . . . . . . . . . . . . . . . 10
　　　　　　　　*ii.　Recording N-242* . . . . . . . . . . . . . . . . . . . 14
　　　　　　　　*iii.　Recording N-245a* . . . . . . . . . . . . . . . . . . . 15
　　　　　　　　*iv.　Recording N-245b* . . . . . . . . . . . . . . . . . . . 15
　　　　　　　　*v.　Jury question* . . . . . . . . . . . . . . . . . . . . . 15
　　　　　　*b.　Hearsay* . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
　　　　　　*c.　Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## I.  INTRODUCTION

In an Indictment (docket no. 1) handed down October 25, 2006, defendant Kenyatta Draine and a co-defendant were charged with knowingly and unlawfully conspiring with others known and unknown to the Grand Jury, from a date unknown but during 2003, and continuing up to and including October 24, 2006, to distribute and to possess with intent to distribute more than one hundred kilograms of marijuana, all in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Trial in this matter is currently set to begin on August 27, 2007.

In anticipation of trial, defendant Draine filed the August 13, 2007, Motion In Limine (docket no. 31) currently before the court.  In his motion, Draine seeks to exclude two categories of evidence:  (1) evidence of his conviction in the State of Oklahoma on April 22, 2002, of trafficking in marijuana; and (2) evidence of audio recordings of a controlled buy, one "live" conversation, and several telephone calls.  Because the court found that it could not resolve disputes about the quality of challenged recordings without reviewing the recordings themselves, the court entered an order (docket no. 33) on August 16, 2007, requiring the government to provide the court with copies of all recordings that the government intends to use at trial.[1]  The government produced the recordings in question for the court's review on August 20, 2007.

The court will consider the admissibility of the challenged categories of evidence in turn.

---

[1] The court does not understand why it must so frequently remind the parties, particularly in criminal cases, that the court cannot evaluate the admissibility of evidence that the parties have not submitted to the court and to which the court does not have independent access.

2

## II. LEGAL ANALYSIS

### A. The Prior Marijuana Conviction

#### 1. Arguments of the parties

Draine contends that the court should exclude evidence of his conviction in the State of Oklahoma, on April 22, 2002, of trafficking in marijuana on the ground that evidence of this conviction is more prejudicial than probative. Indeed, he contends that this prior conviction is irrelevant to his current charge of conspiracy to distribute or to possess with intent to distribute marijuana. He adds that, if convicted of the charged offense, he will stipulate to the prior conviction for purposes of sentencing.

The government, on the other hand, contends that this prior conviction is relevant under Eighth Circuit precedent pursuant to Rule 404(b) to show, *inter alia*, intent and knowledge. The government also contends that the prior conviction involved the same controlled substance at issue in the present case and was close in time to the charged offense, so that evidence of the prior conviction is not more prejudicial than probative. The government represents, however, that it would join in any request for a limiting instruction concerning the evidence of this prior conviction to avoid any potential prejudice.

#### 2. Rule 404(b)

Rule 404(b) prohibits admission of prior convictions and "bad acts" simply to show a propensity to commit a charged offense, but does permit such evidence to be admitted for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FED. R. EVID. 404(b). The Eighth Circuit Court of Appeals has explained the scope of admissibility of evidence pursuant to Rule 404(b), as follows:

> While we have interpreted Rule 404(b) to be a rule of inclusion, *see United States v. Sykes*, 977 F.2d 1242, 1246 (8th Cir. 1992), this interpretation does not give the

3

> government the unhindered ability to introduce evidence of
> prior crimes. Instead, the evidence of prior crimes must be
> 1) relevant to a material issue; 2) similar in kind and not
> overly remote in time to the charged crime; 3) supported by
> sufficient evidence; and 4) such that its potential prejudice
> does not substantially outweigh its probative value. *See United
> States v. Williams*, 308 F.3d 833, 837 (8th Cir. 2002).

*United States v. Crenshaw*, 359 F.3d 977, 998 (8th Cir. 2004); *accord United States v. Lakoskey*, 462 F.3d 965, 979-80 (8th Cir. 2006) (reiterating that Rule 404(b) is a rule of inclusion and that evidence is admissible under Rule 404(b) if it satisfies the same four-factor test), *cert. denied*, ___ U.S. ___, 127 S. Ct. 1388 (2007). Thus, the Eighth Circuit Court of Appeals will reverse admission of purported Rule 404(b) evidence "'only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts.'" *United States v. Marquez*, 462 F.3d 826, 830 (8th Cir. 2006) (quoting *United States v. Thomas,* 398 F.3d 1058, 1062 (8th Cir. 2005), with internal quotations omitted).

### *3. Analysis*

As to the first factor in the test for admissibility of such evidence, relevance to a material issue, *see Lakoskey*, 462 F.3d at 979-80; *Crenshaw*, 359 F.3d at 998, the Eighth Circuit Court of Appeals has "frequently upheld the admission of prior drug convictions to show knowledge and intent when the defendant denied the charged drug offense." *Marquez*, 462 F.3d at 830; *accord United States v. Hessman*, ___ F.3d ___, ___, 2007 WL 2067846 (8th Cir. July 20, 2007); *United States v. Spears*, 469 F.3d 1166, 1170 (8th Cir. 2006), *petition for cert. filed* (March 2, 2007) (No. 06-9864). Thus, contrary to Draine's contention, his prior drug conviction is relevant to his present charge.

The second factor—which is whether the prior conviction is "similar in kind" to the charged offense and not overly remote in time, *see Lakoskey*, 462 F.3d at 979-80; *Crenshaw*, 359 F.3d at 998—is met here, because the prior conviction involved both the

4

same controlled substance, marijuana, and the same substantive conduct, distribution, at issue in the charged conspiracy. Moreover, the prior conviction occurred only the year before the conspiracy charged in this case allegedly began, so that the prior conviction is not so remote in time as to mitigate at all, let alone substantially, its probative value. Thus, this factor is also satisfied.

The third factor, sufficiency of the evidence of the prior offense, *id.* (third factor); *Crenshaw*, 359 F.3d at 998 (same), is not clearly met, however, where the court has little idea from the parties' arguments what the evidence of Draine's prior conviction might be. However, if such evidence is both sufficient and properly limited, *see United States v. Ruiz-Estrada*, 312 F.3d 398, 403-04 (8th Cir. 2002) (the government offered sufficient reliable evidence of a prior conviction in the form of a certified copy of the criminal complaint and a warrant of commitment), this element will also likely be satisfied.

Thus, the first three factors in the test for admissibility under Rule 404(b) do not support exclusion of the evidence of the defendant's prior conviction for marijuana trafficking.

Nor does the fourth factor, the balance of probative value and prejudice, on which Draine principally relies. *See Lakoskey*, 462 F.3d at 979-80 (fourth factor is the balance of probative value against prejudice); *Crenshaw*, 359 F.3d at 998 (same); *see also Clark v. Martinez*, 295 F.3d 809, 814 (8th Cir. 2002) (Rule 403 applies to evidence otherwise admissible pursuant to Rule 404(b)); *United States v. Mound*, 149 F.3d 799, 801-02 (8th Cir. 1998) (same), *cert. denied*, 525 U.S. 1089 (1999). Again, because the prior conviction involved the same controlled substance and the same substantive conduct at issue in the present charge, and is plainly not remote in time, the probative value of evidence of the prior marijuana conviction appears to be substantial. Furthermore, the potential for unfair prejudice, in the form of conviction of the charged offense because the defendant engaged in prior conduct involving marijuana, will likely be substantially—if not

5

fully—mitigated by a limiting instruction reminding the jurors that they may consider this evidence only for purposes permissible under Rule 404(b), not to decide whether Draine is guilty of the charged offense. *See United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *Spears*, 469 F.3d at 1170 (also finding a limiting instruction adequate to guard against potential prejudice); *Marquez*, 462 F.3d at 830 (there was no abuse of discretion in admitting evidence of prior drug convictions where the district court gave such a limiting instruction); *and compare Crenshaw*, 359 F.3d at 1001-02 (the government's actual use of the evidence of a prior conviction did not demonstrate that the evidence was used to prove intent and the court's instruction failed to mention intent as a basis for considering the evidence).

Thus, Rule 404(b) does not bar admission of evidence of the defendant's prior marijuana conviction, and this part of Draine's Motion In Limine will be denied.

### *B. The Recordings*

#### *1. Arguments of the parties*

Next, Draine seeks an order excluding recordings of telephone calls, a "live" conversation, and a "controlled buy." Draine seeks to exclude "prologues" and "epilogues" on some of the recordings, consisting of interviews or instructional sessions with the confidential informant, on the ground that such conversations are hearsay and potentially highly prejudicial, because they simply repeat the government's theory of the case without shedding any light on the identities of persons or the circumstances involved. Draine also seeks to exclude the recordings themselves on the ground that the recordings are of such poor quality that they will not be comprehensible or helpful to the jury. Specifically, Draine contends that there is often so much background noise, such as

6

rustling and movement against a concealed microphone, that the jury cannot glean any meaningful information from the recordings. Draine also argues that the government will not be prejudiced by exclusion of the recordings, because it has confidential informants and law enforcement officers to testify about the incidents to which the recordings pertain. In short, Draine argues that the recordings are so poor that they are not trustworthy and, therefore, should be excluded.

The government states that it has no objection to exclusion of the "prologues" and "epilogues" on some of the recordings and, instead, asserts that it will only offer relevant portions of the recordings. The government also concedes background noise prevents the vast majority of the conversations recorded during the controlled buy from being audible, so that the government has no objection to exclusion of the recording of the controlled buy itself. On the other hand, the government does resist exclusion of phone conversations between the defendant and the confidential source setting up the controlled buy and a conversation between a co-conspirator and a different confidential source wearing a body wire, because those recordings are, in the government's view, "quite clear." The government also contends that recorded statements of co-conspirator Adolfo Sierra are admissible pursuant to Rule 801(d)(2)(E). Finally, the government contends that statements of a second confidential source, Shad Derby, are admissible because they are excluded from the definition of hearsay set forth in Federal Rules Evidence 801(c), where they are not offered for the truth of the matter asserted, but to ensure the completeness and intelligibility of Sierra's statements and because Sierra's statements were still part of the continuing conspiracy, even if Derby was working for the government.

### 2. Analysis

#### a. Quality

"The admission of tape recordings is 'within the sound discretion of the trial court and will not be reversed unless there has been an abuse of that discretion.'" *United States*

7

*v. Webster*, 84 F.3d 1056, 1064 (8th Cir. 1996) (quoting *United States v. Martinez,* 951 F.2d 887, 888 (8th Cir. 1991), *cert. denied*, 503 U.S. 994 (1992), with quotations and alteration omitted). The court does not understand the defendant's challenge to the admissibility of the recordings in this case to be a foundational challenge governed by the seven factors articulated in *United States v. McMillan,* 508 F.2d 101 (8th Cir. 1974), *cert. denied,* 421 U.S. 916 (1975).[2] Rather, the defendant's challenge here is a direct challenge to the quality and audibility of the recordings and, hence, their trustworthiness.

As the Eighth Circuit Court of Appeals explained just over a decade ago,

> Even when the Government satisfactorily clears the *McMillan* hurdle, the defendant may still prevent admission of the tape by proving that it is inaccurate because of inaudibility or some other infirmity. *United States v. Font-Ramirez,* 944 F.2d 42, 47 (1st Cir. 1991), *cert. denied,* 502 U.S. 1065, 112 S. Ct. 954, 117 L. Ed. 2d 122 (1992). A partially inaudible recording will be inadmissible where the defendant establishes that the unintelligible portions are "so substantial, in view of the purpose for which the tape[ ] [is] offered, as to render the recording as a whole untrustworthy⋯" *United States v. Huff,* 959 F.2d 731, 737 (8th Cir.) (quotation omitted), *cert. denied,* 506 U.S. 855, 113 S. Ct. 162, 121 L. Ed. 2d 110 (1992).

*Webster*, 84 F.3d at 1064; *accord Munoz*, 324 F.3d at 992 (also considering whether the quality of the recording calls into question its trustworthiness); *United States v. Calderin-*

---

[2] In *McMillan*, the court explained that, to meet its foundational burden for the admission of recordings, the prosecution must demonstrate the following: "(1) the recording device was capable of recording the events offered in evidence; (2) the operator was competent to operate the device; (3) the recording is authentic and correct; (4) changes, additions, or deletions have not been made in the recording; (5) the recording has been preserved in a manner that is shown to the court; (6) the speakers on the tape are identified; and (7) the conversation elicited was made voluntarily and in good faith, without any kind of inducement." *McMillan*, 508 F.2d at 104; *see also United States v. Munoz*, 324 F.3d 987, 992 (8th Cir. 2003) (reiterating that *McMillan* states the foundational requirements that must be satisfied for a recording to be admissible).

8

*Rodrigquez*, 244 F.3d 977, 987 (8th Cir. 2001) (also considering whether the inaudible portions of a recording rendered the recording as a whole untrustworthy, citing *Huff*, 959 F.2d at 737-38); *United States v. Le*, 272 F.3d 530, 532 (8th Cir. 2001) ("[A] trial judge may, in his or her discretion, decline to admit low quality or unintelligible recordings into evidence, when its quality renders it untrustworthy."). "[I]t is good practice for the district court to make a pretrial evaluation of a recording's admissibility." *Id.* at 1064 n.4 (also noting that, where pretrial assessment is not possible, there is no reason why the court must interrupt proceedings to listen to the recordings *in camera*, and the court may, instead, listen as the recordings are played to the jury).

More specifically, in *Webster*, much as in this case, the defendant argued that certain audio recordings were "hopelessly unintelligible," so that they should not have been admitted. *Webster*, 84 F.3d at 1064. The appellate court agreed that, on one recording, "a constant electronic hum severely hamper[ed] a listener's ability to discern the recorded conversation," but nevertheless concluded that the recording had been properly admitted, because it had never been played for the jury, and was, instead, admitted only to corroborate by its existence the testimony of certain witnesses, so that the jury was not adversely affected by the hum. *Id.* at 1065. As to a video recording, the appellate court concluded that, although the audio portion of the tape was "less than clear," this and other infirmities were not so pervasive as to render the tape, as a whole, untrustworthy. *Id.* In other cases, the Eighth Circuit Court of Appeals has held that, even where some portions of a recording were inaudible, such that the jury probably would not be able to understand everything on the recording, admission of the recording was not reversible error, where the recording was not so inaudible that it was untrustworthy as a whole, *see United States v. Tangeman*, 30 F.3d 950, 952 (8th Cir. 1994), where the defendant was provided with the recordings sufficiently in advance of trial to allow him to prepare his own transcript, *see United States v. Britton*, 68 F.3d 262, 264 (8th Cir.

9

1995), *cert. denied*, 517 U.S. 1105 (1996), and where the defendant was allowed the opportunity to argue to the jury his version of what was contained on the inaudible portions. *See United States v. Nicholson*, 815 F.2d 61, 63 (8th Cir. 1987). On the other hand, the court held that the trial court had properly excluded a recording that included such a substantial portion that was so garbled or inaudible that the recording was rendered "untrustworthy," "confusing," and of "no probative value." *United States v. Jackson*, 67 F.3d 1359, 1367 (8th Cir. 1995), *cert. denied*, 517 U.S. 1192 (1996).

In this case, the court received from the government a compact disc containing audio recordings and transcripts of four conversations: (1) a recording, labeled N-207, of a lengthy conversation, apparently face-to-face, between persons identified by the transcriber as "AS" (Adolfo Sierra (?)) and "SD" (Shad Derby (?)); (2) a recording, labeled N-242, of a telephone conversation between persons identified by the transcriber as "MD" (unknown to the court) and "KD" (Kenyatta Draine (?)); (3) a recording, labeled N-245a, of a second telephone conversation between persons identified by the transcriber as "MD" and "KD"; and (4) a recording, labeled N-245b, of a third telephone conversation between persons identified by the transcriber as "MD" and "KD." The court played and carefully listened to the recordings on both a desktop computer and the high quality audio evidence system in the third floor courtroom, which would be used for any presentation of such evidence to the jury. *See Webster*, 84 F.3d at 1064 n.4 ("[I]t is good practice for the district court to make a pretrial evaluation of a recording's admissibility."). The court finds that the recordings provided to the court are of very mixed quality.

*i.* ***Recording N-207***. Recording N-207, of a lengthy conversation, is occasionally, but not regularly, marred by extraneous noises, apparently from clothing moving against a concealed microphone, and in those instances, the extraneous noise overwhelms the speakers' voices and may hamper any listener's ability to discern the recorded conversation. *Cf. Webster*, 84 F.3d at 1064. The larger problem with this

10

recording, however, is simply that segments of the conversation, some of them quite long, are so distorted or of such uneven volume that they are nearly incomprehensible on a first hearing and sometimes remain so after repeated hearings.

For example, the court reviewed the first three minutes or so of this recording several times without the assistance of the transcript that the government provided, and was unable to make heads or tails of it. With the aid of the transcript, the court remained unable to track several portions of this same segment of the tape against the transcript, because statements by the two speakers that had been transcribed in separate blocks actually overlapped or interleaved comments of the other speaker or simply remained incomprehensible owing to volume or distortion. Those segments of the conversation—ranging from isolated words to rather long exchanges—that emerge with clarity from the general fog of incomprehensibility are often bereft of context. Also, unlike the situation in *Webster*, several portions of this recording are not simply "less than clear," but almost entirely unintelligible, and the court finds that this defect is sufficiently pervasive to render this recording, as a whole, including intelligible portions, untrustworthy as confusing or out of context. *Compare id.* at 1064-65 (finding lack of clarity was not so pervasive as to render the recordings, as a whole, untrustworthy); *Tangeman*, 30 F.3d at 952 (even if the jury probably would not have been able to understand everything, the recording was properly admitted where the recording as a whole was not so inaudible as to render it untrustworthy).

The court turns, next, to the purposes for which the government intends to offer the recording. *Cf. id.* at 1064 (the court must consider the purpose for which the recording is offered and determine whether, in view of that purpose, the inaudible portions render the recording, as a whole, untrustworthy). The government asserts that this recording includes statements of an alleged co-conspirator, Adolfo Sierra, and, thus, those statements are admissible pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence. As an

11

isolated principle, the court does not deny that Sierra's statements may be admissible as Rule 801(d)(2)(E) evidence, but finds that the possibility that the recorded statements are co-conspirator hearsay do nothing to overcome the intelligibility and context problems discussed above.

Similarly, although the government does not intend to offer the statements of Shad Derby on the recording as substantive evidence against the defendant, because the statements of Shad Derby thereon are not offered for their truth, neither does the government intend to offer just the *existence* of this recording to corroborate other evidence. *See id.* at 1064 (the court must consider the purpose for which the recording is offered and determine whether, in view of that purpose, the inaudible portions render the recording, as a whole, untrustworthy). Instead, the government asserts that it intends to offer the recording of statements by Shad Derby "to ensure the completeness and intelligibility" of Adolfo Sierra's statements, citing *United States v. King*, 351 F.3d 859, 865 (8th Cir. 2003), and *United States v. Stelten*, 867 F.2d 453, 454 (8th Cir. 1988). The government also contends that the fact that Derby was acting at the direction and under the surveillance of government agents to obtain evidence against former co-conspirators does not affect the continuing conspiratorial efforts of his former associates who remained at large and, consequently, does not bar admission of his statements pursuant to Rule 801(d)(2)(E), citing *United States v. Lewis*, 759 F.2d 1316, 1348 (8th Cir. 1995), and *King*, 351 F.3d at 865. Again, neither the fact that these statements may present no Confrontation Clause issues, *see King*, 351 F.3d at 865 (statements raise no Confrontation Clause issues when they are not offered for their truth, but "to ensure the completeness and intelligibility of" a person's statements, citing *Stelten*, 867 F.2d at 454), nor the fact that Derby's alliance with the government does not bar admission of his statements under Rule 801(d)(2)(E), where his change of allegiance had no effect on the continuing conspiratorial efforts of his associates who remained at large, *see id.* (citing *Lewis*, 759 F.2d at 1348),

12

overcomes the unintelligibility deficiencies in this recording, so that it simply cannot serve the intended purpose. Thus, the unintelligible portions of the recording still undermine the trustworthiness of this recording for the purpose for which the government intends to offer it.

In short, this recording is more like the ones ruled inadmissible in *Jackson*, 67 F.3d at 1367, because it is sufficiently garbled or inaudible to render it untrustworthy, confusing, and of little or no probative value.

Finally, as to this recording, this is not a situation in which the problems with this recording can be cured by giving the defendant the recording sufficiently in advance of trial for him to have the opportunity to prepare his own transcript. *See Britton*, 68 F.3d at 264. Rather, here, the court has considerable doubt that any transcriber could make heads or tails of much of the recording; indeed, the court finds that the transcript that the government has provided must be the product of a great deal of speculation. Moreover, it would be improper, in any event, to admit the recording with a transcript, where the recording is so poor that the jury would, inevitably, have to rely almost exclusively on the transcript to get any sense out of the recording. *See* FED. R. EVID. 1002 ("To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress."); *see also United States v. Wilkinson*, 53 F.3d 757, 761-62 (6th Cir. 1995) ("[T]he jury's reliance on the transcript, in effect, transforms it into evidence," even though the transcript is not admitted as evidence). Similarly, it is not sufficient to allow the defendant—or anyone else—the opportunity to argue to the jury his version of what was contained on the inaudible portions of the recordings, *see Nicholson*, 815 F.2d at 63 (it was not improper to admit recordings where the defendant was allowed to argue to the jury his version of what was contained on the inaudible portions), because the quality of the recordings is so poor that their contents can neither corroborate nor be corroborated by the

13

testimony of the alleged participants; such testimony would simply substitute for the recording, again in violation of Rule 1002.

      *ii.*    *Recording N-242*. Recording N-242 is a recording of a telephone conversation between persons identified by the transcriber as "MD" (unknown to the court) and "KD" (Kenyatta Draine (?)). While "KD's" statements come through clearly enough, the statements by "MD" are so much quieter and so distorted as to be nearly or completely incomprehensible. Even the court's attempts to adjust the volume level for the two speakers did little to clear up most of "MD's" statements, so that a jury would, again, be forced to rely unduly on the transcript, contrary to Rule 1002, to understand half of the conversation and, consequently, the context of the statements that they could understand unassisted.

      More specifically, the government's transcriber has transcribed what appears to be the critical portion of the recording as follows:

> MD: So what we going to do about my bill?
> KD: Shit, 18 . . .
> MD: Okay yeah, yeah okay . . . I'm going to need one at the least . . .

While the court finds the transcription of the first of the statements attributed to "MD" to be plausible, after repeated listenings, the court believes that what it hears may have been strongly suggested by what the transcript says. Thus, it is the transcript, not the recording, that has become the pertinent evidence.

      Moreover, it is apparent that the government intends to offer this recording as substantive evidence against defendant Kenyatta Draine, not merely to corroborate other evidence. *Cf. Webster*, 84 F.3d at 1064 (the court must consider the purpose for which the recording is offered and determine whether, in view of that purpose, the inaudible portions render the recording, as a whole, untrustworthy). In light of this purpose, the court finds that the unintelligible portions, which are most of "MD's" side of the

14

conversation, render the recording as a whole untrustworthy and, therefore, inadmissible. *See Jackson*, 67 F.3d at 1367.

      ***iii.***     ***Recording N-245a***. The next recording at issue, labeled N-245a, is of a second telephone conversation between persons identified by the transcriber as "MD" and "KD." This recording suffers from the same deficiencies as the preceding recording concerning the differences in volume and clarity of alternate speaker's statements, albeit not to quite the same extent. Even so, much of what "MD" says is still distorted. The mix is further complicated by background sounds, consisting of pops or thuds, possibly from the way a telephone handset is being handled, and what appears to the court to be the audio portion of a television show. Moreover, it appears that the transcriber has left several lacunae and did not even attempt to transcribe the last 20 seconds of a 62-second recording. Thus, the court finds that the flaws in this recording render it as a whole untrustworthy and, therefore, inadmissible. *See Jackson*, 67 F.3d at 1367.

      ***iv.***     ***Recording N-245b***. The final recording that the government intends to offer, labeled N-245b, is of a third telephone conversation between persons identified by the transcriber as "MD" and "KD." In contrast to all of the other recordings, a juror would be able to make sense of this recording, almost in its entirety, without the assistance of a transcript, and the few distorted words or phrases do not detract from the sense of the conversation, because they are often repeated back by the other party to the conversation. Thus, it appears that the jurors would have no more difficulty understanding this conversation than the parties did. Therefore, this recording will *not* be excluded.

      ***v.***     ***Jury question***. Finally, this court acknowledges that, in some cases in which the defendant challenged the audibility or quality of recordings, this court has left to the jury the question of what the recordings contained, using a jury instruction based primarily on the instructions approved in *United States v. Singleton*, 125 F.3d 1097, 1105-06 (7th

15

Cir. 1997).[3] Such an instruction is not sufficient to cure the defects in the first three recordings discussed and excluded above, however, because the inaudible or unintelligible portions of those recordings are so extensive that jurors would, if they followed the instruction, have to disregard each such recording and any accompanying transcript in their entirety.

### b. *Hearsay*

The court did not read Draine's Motion In Limine to assert hearsay objections, as well as quality objections, to the recordings in question, except as to the "prologue" and "epilogue" segments that the government has conceded should be excluded. The government, however, asserted that the recordings in question were not only of adequate quality, but would also withstand hearsay objections. Until and unless the court is presented with hearsay objections to the only recording otherwise admissible, the court will not address any hearsay issues concerning that recording.

### c. *Summary*

In light of the analysis above, recordings N-207, N-242, and N-245a will be excluded, and Draine's motion in limine will be granted to that extent, but recording N-245b is admissible, and the portion of Draine's motion seeking to exclude it will be denied.

---

[3]Such an instruction is in the following form:
> If you find that any portion of a recording is inaudible or partially inaudible, because of such things as actual gaps in the recording or other noise on the recording, or if you hear something different from what is indicated in the transcript in a portion of the recording that is inaudible or partially inaudible, then you must disregard the transcript to the extent that the transcript attempts to indicate what the persons on the recording said during the inaudible or partially audible portions. You may also consider whether inaudible or partially audible portions of the recording indicate that the recording has been altered or damaged, such that it is unreliable, in whole or in part.

16

### III. CONCLUSION

Upon the foregoing, defendant Draine's August 13, 2007, Motion In Limine (docket no. 31) is **granted in part and denied in part**. Specifically,

1. The motion is **granted** to the extent that the government represents that it will not offer challenged evidence, specifically, the "prologues" and "epilogues" of certain recordings and the recording of the "controlled buy"; and

2. The motion is **granted** as to recordings N-207, N-242, and N-245a; but

3. The motion is **denied** as to evidence of the defendant's prior marijuana conviction; and

4. The motion is **denied** as to recording N-245b.

**IT IS SO ORDERED.**

**DATED** this 22nd day of August, 2007.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA